Good afternoon, members of the Court. Counselor Mr. Cameron. May it please the Court, I'm John Tucci from the District of Arizona, United States Attorney's Office, representing the government. I'd like to reserve the last two minutes, but I'll keep, I keep track of that, I understand, so. The essential question, Your Honors, with regard to the authorization point, the essential question and nothing more, is did a duly designated official of the Attorney General authorize the Staffeldt wiretap before the application? That's the essential question. Your case is over. You won, right? I like to frame it that way, Your Honor. Yes. And I believe we have. I don't think there's any dispute about that, is there? There is. There should not be, Your Honor. I thought the dispute was about whether the papers that were submitted were adequate on their face or whether they didn't qualify for the issuance of the warrant. It's a little confused and wrapped up, Your Honor. There has been an assertion of facial insufficiency made as well. I submit that the government still wins on that point, because what makes for a facially sufficient application and order, more properly, we're concerned with the order, is that the order identify the authorized official in the, within the Attorney General's office that did, in fact, authorize this application. And how did Judge Carroll arrive at that? How did Judge Carroll arrive at that? He had, albeit the wrong letter, a letter that indicated Dag John Malcolm, the person who did, in fact, authorize our wiretap. What it, what the application does is refer to the attachment by reference, doesn't it? Yes. And the attachment is the wrong attachment. That's right, Your Honor. And it is the wrong attachment, but still identifying the right official. If Judge Carroll had read the attachment, he would have known that it was meaningless who signed that. That's entirely possible, Your Honor. It is entirely possible. That's entirely possible. It's certain, isn't it? It would be certain that he had the wrong person. No, it would be certain that he had the wrong letter, not the wrong person. All right, but then he would have had to send it back. I mean, you, you have got a very uphill case, let me tell you. Very uphill. If we're looking only at facial insufficiency, Your Honor, and if facial, and if facial insuffi, no, I submit we're not, Your Honor. If facial insufficiency is the end of the deal, that would be the case. Well, why aren't we looking at facial insufficiency? Because we have the Chavez case, which is about 20 years old out there, Your Honor, that says certain errors, certain errors like this that do not grasp or go to the fundamental purpose of this requirement, which was Congress making sure that a politically accountable and identifiable person make this authorization. Yeah, but it's fundamental you get the right person identified as to the lie attack. You didn't do it. But we also have, in addition to Chavez, where the person that was identified was wrong, and that wiretap was still held to be adequate. It was not suppressed. We have an even better case in the Ninth Circuit called Callum that came out just a month after this suppression order, a month or two after this suppression order was issued. And in Callum, there was, in fact, no authorizing official identified in the application packet or in the order. And yet this Court still found that that was sufficient, and it did not suppress the wiretap. And that's what we have here, a situation where we have information, albeit a clerical error that gives some bad information, still not any worse than having no identification at all. Why did the government apply for an amended order? Because it wanted to clean up the record and make sure that everything was ultimately shown on the record to be done correctly. But it was, and that's why I want to get back to the essential question, Your Honor. The requirements, the essential requirements as held by this Court and the Supreme Court were met as of the time the application was made. The important timeline elements are these. On October 3rd of 2003, the Deputy Assistant Attorney General for the Criminal Division, John Malcolm, did, in fact, authorize the Staffel wiretap. And he faxed that authorization letter to DOJ's Office of Enforcement Operations. Still one step from getting here, but the authorization had been obtained on that date. We didn't get, AUSA Verkaterin did not submit the application until six days later, October 9th. So that essential timeline is established. And the documents that establish that are in several places, in both our excerpt of record and in Supplemental X. Is what you're telling us that, and I understand this is hypothetical, but if October 10th was when the order was approved by Judge Carroll? October 9th, Your Honor. Okay. I thought the date of the order was the 10th, but the date that it was approved. So what you're telling us is if the assistant had appeared before Judge Carroll and Judge Carroll said, did the appropriate, asked the assistant, did the appropriate official at the Department of Justice approve the wiretap application? And the assistant said, yes, sir. And Judge Carroll said, how do I know that? And the assistant said, just look at the attachment to our application, Your Honor. And he turns it over and reads it and says, wait a minute, this attachment you're referring to talks about a case in Pittsburgh, it doesn't have anything to do with this case, that the assistant would have been on good, strong legal grounds to say, well, you could ignore that. We did, in fact, get the permission of the Department of Justice. I probably attached the wrong sheet to the application. So don't worry, Your Honor, you can go ahead and authorize the wiretap. No, I wouldn't put it quite that way, Your Honor. I don't think the assistant could have stopped there and said, trust me on this. What would have happened at that point, if Judge Carroll had seen that it was the wrong letter, is that we would have stopped, gone back to the office, called and got the right facts right then and there. And there would have been no interception of communications? There wouldn't have been an interception of communications for — And yet the interception of communications went on for more than a month? Yes, Your Honor. And the government concedes that valuable information was gained during that period? It does concede that valuable information was gained during that period. And there were 34 days of interception, or 30 days of interception. And the next application was based, in part, on that information? Yes, it was, Your Honor. But what we still have, though, is that whether or not the right letter was in front of Judge Carroll, the authorization had been obtained. And that delay, by the way, that I talked about, where we would have gone back and gotten the right letter, would have been a matter of minutes or hours, not 30 days. Just as a matter of fundamental policy before citizen telephone communications are intercepted by the government, shouldn't we insist on strict compliance with the statute? Your Honor, that question has been answered by Calum. And the answer is no, as long as the error that is sought to be addressed here does not go to the fundamental issue of not having proper authorization by a designated and accountable person in the agency. Yet the only way the issue the Article III judge issuing a wiretap authorization in this case would have known that is by reading the attached exhibit. And had that been done, it would have been clear that this was an improper application. It was improper, wasn't it? It was. There we don't submit that it was improper. It had the information it had to have. I understand the point that it was the wrong letter dealing with something else. But at that point, we had been told that it was DAG John Malcolm, and that's what we were prepared. And if there, again, if there had been no letter attached, if USA Verkateran had simply gone over and said, we have the authorization. And the authorizing official is identified as John Malcolm. Under the statute and under the law of Chavez and now Calum for the Ninth Circuit, that would have been sufficient. Your Honor, I'm dug into my rebuttal time. So if you have no further questions for me on. We'll come back at rebuttal. Okay. May it please the Court. My name is Cameron Morgan. I represent Jeremy Staffeld, and I'm also arguing on behalf of the remaining defendants in the case. Gentlemen, I have a different, I have a different idea about the question is. The question in my mind is, did Judge Carroll abuse his discretion by issuing this order based on a authorization for Pittsburgh, Pennsylvania? And I submit to you that he did. It's pretty obvious that he didn't read it. And had he read it, I think as you've suggested, he would not have issued this order. Let's turn the hypothetical on you. Let's suppose that this application recited that an individual, an appropriate individual at the Department of Justice had authorized the application for an interception and referenced an attachment which was not attached. Would that have been sufficient? I submit that it would not, Your Honor. The reason being that the application has to show the evidence of the authorization. It has been the procedure followed for a number of years, as is reflected in all the case law. Counsel for the government is correct, isn't he, in stating that what the statute requires is that the government inform the Article III judge that an appropriate official at the department has, in fact, authorized the interception. Isn't that correct? No, Judge. It is. They must name the appropriate official. Okay. But it would be sufficient to simply name that individual and not attach an authorization letter of any kind. Hypothetically, possibly. But I — Judge, all of the old cases — Can I take you back one question further? You answered Judge Hawkins' question that you must, under the statute, name the individual. Yes, Your Honor. Is there a case that says that? The statute itself says that. It says you must name the individual? Yes, Your Honor. Didn't — I'm sorry. That's in both the application and in the order. Both the application and the order in this case. Calum, they didn't name the individual in the order. Is that right? It's correct, Your Honor. They did have the authorization attached to the application with the named appropriate official. But you say the statute requires that you name the individual in the order. Both the application and the order. And they didn't name him in the order in Calum, and this Court said that's merely a technical violation. It doesn't matter. That's — the reason the Calum court said that is because the issuing judge had the authorization in front of him in the application. So he knew that it had been authorized by an appropriate official. That's also the fact pattern in — in Swan and all of the other cases, the old cases that discuss this issue, Your Honor. So you're — as long as the judge has before him the name of the individual and can know that that — not the name — I mean, as long as he has before him a statement by the government that this is the individual, that would be enough. Well, Judge, I submit to you it would not. I think for any Article III judge that's looking at it, you have to have the name of the individual. But there must be some evidence in there that he is an authorized individual. Okay. So — And that's why they use — Is he — is he an authorized individual? And that's why they typically use the authorization letter. And — Well, why don't they do that? Why don't they just put in the pleading, it's Joe Smith, he's an authorized individual? That would comply, wouldn't it? Well, it may not satisfy a lot of district court judges who are looking at this because back in the 70s of the shell game that the Nixon administration used with respect to the responsibility and authority — Surely this administration wouldn't do anything like that. Can I comment? I don't know. That's a — He can. You can't. Right. No. Mine was a statement of fact. All right. Gentlemen, the — I'm looking at the statute 2518-1a, Procedure for Interception of Wire, Oral, or Electronic Communications, and it recites what the application must contain, and 1a says, the identity of the investigative or law enforcement officer making the application, this had that, didn't it? Yes. And the officer authorizing the application, it had that, didn't it? No, Your Honor, it did not. That's what's missing. It didn't state the name of the DOJ official? No. It simply referenced the attached letter? Yes, Your Honor. And is the application in our record, the actual application? Yes, Your Honor. It's attached to my materials. Okay. Your Honor, I'd like to bring up — It said, as I recall, that it had two or three exhibits, one of which was B. B was the letter that gave the name of the individual. Yes, Your Honor. There was a — The only place in connection with the application that the name or identity of the individual appears is in Exhibit B, which is the letter about the Pittsburgh wiretap. That's correct, Your Honor. Your Honor, if I may take my remaining time, I would like to turn to the issue of necessity, which is the alternative grounds for upholding the district court suppression order in this case. After we did this case, this court issued Gonzales, U.S. v. Gonzales. And in Gonzales, the court found that there was no necessity as a matter of law for a wiretap on a bus station in Los Angeles in an immigrant smuggling case. This case is on all fours with Gonzales, and all fours being the fact that no — that surveillance was only attempted on one occasion, that no — there was a limited use of pin registers and trap and trace. There was no search warrant attempt, no attempt to use confidential sources, no use of pole cameras, which were later used in this investigation, and there was boilerplate in the necessity portion of the affidavit with respect to interviews, undercover officers, and other matters. Gonzales held that that, as a matter of law, was insufficient under the prior case law on Carniero, Blackmon, and Ippolito. I submit in this case, as an alternative grounds for upholding the district court judge who suppressed here, that you can turn to necessity, look at this case, and look at Gonzales, and you'll see that they're almost exactly the same, and affirm the suppression order. Thank you, sir. Thank you. Mr. Tucci, I'm looking at the application. It's — and I'm looking at page 2 of the excerpts of record, and it's page 2 of the application, and in paragraph 3, it says, under the power conferred upon him by special designation attorney general, and there's an order on that, an appropriate official of the criminal division has authorized this application. Attached to this application is Exhibit A, is a copy of the attorney general's order. Exhibit B, attached to Exhibit B, is a copy of the memorandum of authorization approving this application. If there had been nothing attached to this application, we would not know the identity of the individual who authorized, correct, or his title, or her title. You are correct. Okay. How does that comply with 2518-1A? Because there was something attached, Your Honor, and again, I recognize — What was attached was the wrong thing. The wrong thing — we have to go back to the facts, though, Your Honor, which were adduced by an affidavit from the OEO official later on that explained what the mix-up was. The facts — The explanation of the mix-up does nothing about the validity of the application made to Judge Carroll in the authorization for the intercept. I mean, the one thing, you're — would be standing on much firmer ground if — if this application had identified by name and title the individual who had authorized. Then it seems to me that you could appropriately argue that it didn't matter what the attachment was. This doesn't either. We don't know — from this application, you don't know whether this was, in fact, an appropriate official or even who it was, right? I agree with that, Your Honor. And the only way that the authorizing judge can do that is by reference to Exhibit B, and it's the wrong case. Yes, Your Honor. It is the wrong case. And I've argued as much as I think it makes sense to argue that we had the right person, I will simply go back to the second position, which is that even if the court finds that this was facially insufficient because the right official was identified but in the wrong letter and, therefore, the wrong letter is a nullity, we still have Chavez, the Supreme Court case. In that — in that situation, the wrong official was identified in a letter. The right official was nowhere known. That is a violation on its face. And the Supreme Court still said, yes, but, that doesn't go to the heart of the purpose of that statutory requirement. As long as that statutory requirement's core purpose of an authorized and identified individual at the AG's office giving the authorization before the application came in, it's going to be all right. It's disfavored, obviously, because it is an error, but it's still okay. Your Honors, I'm over, and I'm not going to be able to address the issue of — Well, I wanted to ask you one question about necessity. The — the opponent in his brief relies primarily on Gonzales. In fact, it's cited on five separate pages of his brief. You've discussed necessity, and you've discussed a number of cases, but you don't mention Gonzales. What is the explanation for that? The AUSA who wrote this, under my supervision, and so I was aware, we discussed this, and we came to the — we do not believe that Gonzales is applicable to this case, nor, in fact, is Blackman when it comes down to it, because Blackman and Gonzales — Maybe, but if that's his primary case, and he discusses it in five places in his brief, wouldn't you at least say to us why you don't think it's applicable? It probably was error not to include at least a footnote. In essence, the reason for Gonzales and Blackman — We just take his arguments on Gonzales at face value, since you don't refute them? You don't say Gonzales is — he's wrong about Gonzales? You just seem to accept what he says and don't respond? I see your point, Your Honor. It's hard to respond to that. Okay. Thank you. Thank you both. Case just argued will be submitted. The — Do you want a break for the last case, or do you want to go ahead? I just want to go ahead. You, but I may have to go ahead. Well, since it's the last case, you want to go ahead, or do you want to go ahead? Sure.
judges: Reinhardt, Noonan, Hawkins